UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CRYSTAL WHITE,
    *Plaintiff*,

v.

WELLS FARGO BANK, N.A.,
    *Defendant*.

No. 3:18-cv-1676 (VAB)

**RULING ON MOTION FOR LEAVE TO AMEND OR CORRECT COMPLAINT**

Crystal White ("Plaintiff"), proceeding pro se, sued Wells Fargo, N.A. ("Wells Fargo" or "Defendant") for false advertising under the Lanham Act, promissory fraud, and misrepresentation in the United States District Court for the Southern District of New York. Complaint, ECF No. 2 ("Compl.").

On October 21, 2018, Judge Stanton transferred to the United States District Court for the District of Connecticut. Transfer Order, ECF No. 3.

After reviewing the motion for leave to proceed *in forma pauperis*, Magistrate Judge William Garfinkel recommends dismissing the case for lack of standing under 28 U.SC. § 1915(e)(2)(B) because the Lanham Act requires that a plaintiff be a competitor of the defendant that is alleging a competitive injury. Recommended Ruling, ECF No. 12, at 2.

In response, Ms. White moved for leave to amend her Complaint. Motion for Leave to File Amended Complaint, ECF No. 15.

For the following reasons, the Court **ADOPTS** Magistrate Judge Garfinkel's recommended ruling and **DENIES** leave to amend the Complaint.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Ms. White claims that World Savings Bank, a company that later merged with Wells Fargo, solicited her "to refinance her loan on her condominium from a prior loan with Astoria Federal Mortgage Corporation." Compl. at ¶ 1. In doing so, Ms. White alleges that World Savings Bank "did not disclose to her that its intention was not to pay off the prior loan and instead file[d] a loan release from Nationwide Title Clearing Inc." and then "pocketing the money earmarked for paying off Astoria." *Id.* at ¶ 2.

Ms. White also alleges that Nationwide Title Clearing "is under investigation for issuing false loan releases." *Id.* at ¶ 3.

Ms. White then alleges that "she will be able to prove by discovery that federal agencies are involved as parties to her loan." *Id.* at ¶ 6.

Ms. White also contends that she was "cheated out of her modification promised through her settlements in regard to [World Savings Bank] that Defendant was part of, including by falsely filing affidavits in Connecticut Superior Court." *Id.* at ¶ 7.

Ms. White's core allegations are that Wells Fargo "colluded in an arrangement harmful to the Plaintiff by concealing that it was involved in a 'bait and switch', false advertising, intending to keep the money earmarked for paying off her prior loan instead of paying off her prior loan. Instead it had a false loan release issued by Nationwide and filed it with the local Town Clerk." *Id.* at ¶ 14.

### B. Procedural History

On September 25, 2018, Ms. White filed her Complaint against Wells Fargo. Compl. The same day, she filed a request to proceed *in forma pauperis*. Request to Proceed In

Forma Pauperis, ECF No. 1.

On October 24, 2018, the case was referred to Magistrate Judge William Garfinkel to deal with the motion to proceed *in forma pauperis*. Order Referring Case, ECF No. 10.

On December 5, 2018, Magistrate Judge Garfinkel granted Ms. White's motion for leave to proceed *in forma pauperis* but recommended that the Complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B). Order Granting Motion for Leave to Proceed In Forma Pauperis, ECF No. 11; Recommended Ruling, ECF No. 12.

On February 1, 2019, Ms. White filed a motion to amend or correct her Complaint. Motion for Leave to File an Amended Complaint, ECF No. 15.

## II.    STANDARD OF REVIEW

### A.    Section 1915 Dismissal

Under 28 U.S.C. § 1915(e)(2)(B), a court "shall dismiss a case at any time if it determines that" the complaint or amended complaint "is frivolous or malicious . . . fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." Dismissal of a complaint or amended complaint on those grounds is required "regardless of whether the prisoner has paid the filing fee" or is proceeding *in forma pauperis. See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that includes only "'labels and conclusions,' . . . 'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). "Even after *Twombly*" and *Iqbal*, courts "remain obligated to construe a *pro se* complaint liberally," but the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### B. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that parties may either amend once as a matter of course or, once the period has elapsed, move for leave to file an amended complaint. Fed. R. Civ. P. 15(a). Parties who fail to file an amended complaint within 15(a)(1)'s time period, or who seek additional amendments, may seek the consent of their opposing party or the court's leave to amend. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Id.*; *see also Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (Internal citations omitted)); *Park B. Smith, Inc. v.*

4

*CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks and citations omitted)).

Although the rules do not require detailed allegations, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Twombly*, 550 U.S. at 555–56. Conclusory allegations are insufficient. *Iqbal*, 556 U.S. at 678. Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

It is also well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## III. DISCUSSION

### A. Section 1915 Dismissal

The Court must determine whether the cause of action is frivolous, malicious, or without merit. 28 U.S.C. §1915(e)(2)(B). This Court "*shall dismiss* the case at any time if the court determines that . . . the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B) (emphasis added). A claim is said to be frivolous if it does not have an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A court will find a claim frivolous "when the facts alleged rise to the level of the irrational or the

5

wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

When a plaintiff appears pro se, as Ms. White has, her Complaint must be construed liberally in her favor and must be held to a less stringent standard than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). It is well established that "[t]he power to dismiss *sua sponte* must be reserved for cases in which a *pro se* complaint is so frivolous that, construing the complaint under the liberal rules applicable to *pro se* complaints, it is unmistakably clear that the court lacks jurisdiction or that the claims are lacking in merit." *Mendlow v. Seven Locks Facility*, 86 F. Supp. 2d 55, 57 (D. Conn. 2000).

Here, the Complaint alleges that the defendant, which "claims to be a direct successor to" World Savings Bank, was involved in a "bait and switch" in 2005. Compl. at ¶¶ 12, 14 Specifically, Plaintiff claims that World Savings Bank solicited Wells Fargo Bank to refinance the loan on her condominium from a prior loan with a mortgage corporation. *Id.* at ¶¶ 14, 15. Plaintiff alleges that the prior loan was not paid, and that the defendant instead filed a false loan release. *Id.* at ¶ 14. She brings her claim (based on false advertising) pursuant to the Lanham Act. *Id.* at ¶ 20.

When evaluating Ms. White's motion for leave to proceed *in forma pauperis*, Magistrate Judge Garfinkel recommended dismissing Ms. White's Complaint under 28 U.S.C. § 1915(e)(2). In his analysis, Magistrate Judge Garfinkel recommended dismissing Ms. White's Complaint because of a lack of standing. "[T]o have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001).

In this case, as a consumer and not a competitor, Ms. White claims that Wells Fargo injured her because of its foreclosure action, however, she has not alleged that she has not

alleged a competitive injury. Magistrate Judge Garfinkel therefore recommended dismissing the Complaint. *See Savage v. Beiersdorf Inc.*, No. 13-CV-0696 DLI LB, 2013 WL 5532756, at *5 (E.D.N.Y. Sept. 30, 2013) (dismissing Lanham Act claim when it alleged "personal injury, instead of a competitor claiming competitive injury.").

After reviewing Magistrate Judge Garfinkel's recommended ruling, the statute, and case law, this Court adopts the recommended ruling because Ms. White would not have standing to bring a Lanham Act claim. *See Telecom*, 280 F.3d at 197 ("[T]o have standing for a [Lanham Act] false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury.").

Accordingly, the Court must next determine if it should grant Ms. White's motion for leave to amend her complaint.

### B. Leave to Amend Complaint

Federal Rule of Civil Procedure 15(a) governs the filing of amended pleadings prior to trial. A party is allowed to amend its pleading "once as a matter of course" within "21 days after serving it" or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Once that time period elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave." F. R. Civ. P. 15(a)(2). Federal Rule of Civil Procedure 15(a)(2) requires that the Court "should freely give leave when justice so requires."

At the same time, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente*, 310 F.3d at 258; *see also Donovam v. Am. Skandia Life Assurance Corp.*, 217 F.R.D. 325, 325 (S.D.N.Y. 2003)

7

("Where a proposed amended complaint cannot itself survive a motion to dismiss, leave to amend would be futile and may clearly be denied"), *aff'd*, 96 F. App'x 779 (2d Cir. 2004). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint; to survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Protegrity Corp. v. AJB Software Design, Inc.*, No. 3:13-cv-01484, 2015 WL 461041, at *1 (D. Conn. Feb. 2. 2015) (citing *Iqbal*, 556 U.S. at 678). While factual allegations are accepted as true, a complaint "must offer more than 'labels and conclusions,' or 'a formalistic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Bentley v. Greensky Trade Credit, LLC,* 156 F. Supp.3d 274, 283 (D. Conn. 2015) (Bolden, J.) (quoting *Twombly*, 550 U.S. at 555, 557).

Here, Ms. White's motion for leave to amend asserts four new causes of action related to her underlying mortgage dispute with Wells Fargo: (1) negligence under the Home Affordable Modification Program ("HAMP") guidelines; (2) fraudulent scheme; (3) violation of the unfair competition law; (4) violation of the Connecticut Unfair Trade Practices Act (CUTPA). Amended Complaint, ECF No. 15-1 ("Am. Compl."). The Court will therefore assess the new claims alleged in Ms. White's proposed Amended Complaint.

1. **Negligence**

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *McDermott v.* State, 316 Conn. 601, 609 (2015) (citing *LePage v. Horne*, 262 Conn. 116, 123 (2002)). Within the duty, "there are two distinct considerations." *LePage*, 262 Conn. at 123. "First it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the

scope of that duty." *Id.* And "[t]he issue of whether a duty exists is a question of law." *Id.*

In support of her motion for leave to amend, Ms. White argues that her Amended Complaint alleges a negligence claim based on Wells Fargo's alleged "duty to exercise reasonable care in the creation, implementation and use of its internal software to determine whether a mortgage modification was required under HAMP regulations." Am. Compl. at ¶ 87. Ms. White alleges that Wells Fargo "had a duty to borrowers to give HAMP mortgage modification who had substantial hardship under HAMP guidelines." *Id.* ¶ 88. And Wells Fargo "failed to exercise reasonable care in the creation, implementation, and use of its internal software to determine whether a mortgage modification was required under HAMP guidelines and the HAMP intent to help home owners stay in their homes." *Id.* at ¶ 89. Ms. White alleges that Wells Fargo breached its duty to her and was the direct and proximate cause of her injuries, harm, and economic loss. *Id.* at ¶¶ 91–93.

Under Connecticut law, a duty determination is "a legal conclusion about relationships between individuals." *McDermott*, 316 Conn. at 609. Finding a legal duty requires "(1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Mazurek v. Great Am. Ins. Co.*, 284 Conn. 16, 29 (2007) (citing *Murdock v. Croughwell*, 268 Conn. 559, 566 (2004)).

While "[g]enerally there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer," *see Southbridge Assocs., LLC v. Garofalo*, 53 Conn. App. 11, 19 (1999) (citations omitted), the mere "fact that a bank is indebted to its

account holders for the amount of the funds that they have deposited . . . imposes no special duty of care for the safekeeping of the funds on deposit," *see Frigon v. Enfield Savings & Loan Assn.,* 195 Conn. 82, 87 (1985) (citations omitted). Indeed, breach of fiduciary duty and negligence are not interchangeable duties. *See, e.g., Sherwood v. Danbury Hospital,* 278 Conn. 163, 196 (2006) ("Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." (internal quotation marks omitted)). Accordingly, to establish a duty of care, "the plaintiff must assert and demonstrate additional circumstances that establish more than a bank-depositor relationship." *Saint Bernard Sch. Of Montville, Inc. v. Bank of Am.*, 312 Conn. 811, 837 (2014).

Here, there is no Connecticut Supreme Court or Appellate Court decision that recognizes liability for a bank's failure to exercise reasonable care in denying a customer's application to a non-mandatory program. But because Ms. White argues that Wells Fargo owed her a duty of care as a potential HAMP recipient, the Court will assess whether Wells Fargo's denial of Ms. White's HAMP application creates a duty under Connecticut's two-step framework.

First, under the circumstances, Ms. White's foreclosure injury was a foreseeable result of Wells Fargo denying her financial assistance from the HAMP program. In Connecticut, the "threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." *Lombard v. Edward J. Peters, Jr., P.C.,* 252 Conn. 623, 633 (2000). The Court must then determine whether an "ordinary person in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result." *Id.* (alterations omitted).

Here, it was foreseeable that a party in Wells Fargo's position, knowing the financial information that Wells Fargo knew or should have known, would reasonably anticipate the

general harm of a foreclosure action resulting from denying a HAMP program application. Accordingly, Ms. White has met the first prong of the duty inquiry.

Second, "[a] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists." *Lombard v. Edward J. Peters, Jr., P.C.,* 252 Conn. 623, 633 (2000). The Supreme Court of Connecticut has recognized four factors when determining whether a legal duty is a matter of public policy: " (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." *Murillo v. Seymour Ambulance Ass'n, Inc.*, 264 Conn. 474, 480 (2003). The Court thus will evaluate the public policy considerations of Ms. White's assertion that her HAMP program application creates a duty.

As to the first factor, the Court believes that normal expectations of applicants to federal programs, such as HAMP, are that it is possible for applicants to be denied for not meeting the requisite qualifications. Because there "there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer," *see Garofalo*, 53 Conn. App. at 19 (citations omitted), there is no normal expectation that a consumer is entitled to enrollment in a government program or that a personal liability duty attaches to a bank that denies a consumer's application. This factor therefore weighs against imposing a duty.

As to the second factor, the Court believes that there is a public policy encouraging consumers to participate in federal financial assistance programs, while limiting their potential financial exposure by not participating. This factor therefore weighs in favor of imposing a duty.

As to the third factor, the Court believes that recognized a personal liability duty for banks that deny financial applications would increase litigation. This factor therefore weighs

11

against imposing a duty.

As to the fourth factor, decisions from other jurisdictions are not particularly helpful. But the Connecticut Supreme Court has denied past attempts to create an amorphous duty of care from a contractual relationship. *See Sherwood*, 278 conn. at 196. This factor therefore weighs against imposing a duty.

In sum, although Wells Fargo could have foreseen Ms. White's injury, the public policy of Connecticut does not support imposing a duty of care on banks related to their denial of a customer's application to a non-mandatory program.

Accordingly, she has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 2. Fraudulent Scheme

In Connecticut, the essential elements of common-law fraud are: "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury . . . . Under a fraud claim of this type, the party to whom the false representation was made claims to have relied on that representation and to have suffered harm as a result of the reliance." *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 142 (2010) (quoting *Suffield Dev. Assocs. Ltd. P'Ship v. Nat'l Loan Investors, L.P.*, 260 Conn. 766, 777–78 (2002)). "In contrast to a negligent representation, [a] fraudulent representation . . . is one that is knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it." (Internal quotation marks omitted.) *Kramer v. Petisi,* 285 Conn. 674, 684 n. 9 (2008). "This is so because fraudulent misrepresentation is an intentional tort." *Id.* at 684.

In support of her motion for leave to amend, Ms. White argues that Wells Fargo has interfered with her rights to possess and control her personal property, and that Ms. White has a superior right of possession, right of control, exclusion, and right of enjoyment. Am. Compl. at ¶ 95. Ms. White also alleges direct and proximate harm of injury, damages, and loss as a result of the fraudulent scheme. *Id.* at ¶ 96.

Here, Ms. White alleged that Wells Fargo made false representations to her and that she relied upon those statements to her detriment. Specifically, Ms. White alleges that that Wells Fargo fraudulently represented to her elements of her loan modification. It can be inferred from those allegations that Wells Fargo made the statements to induce Ms. White into modifying her loan that caused her to accept an unfavorable mortgage, which she ultimately did do. Ms. White has therefore pleaded the first, third, and fourth elements of a fraudulent misrepresentation cause of action.

Ms. White, however, fails to allege that Wells Fargo knew that the "representations were untrue" at the time those representations were made to her. *See Sturm*, 298 Conn. at 142–43. While "knowledge of the falsity is an essential element of a cause of action for fraudulent misrepresentation," Ms. White has failed to allege that element. *Id.* at 143.

Accordingly, she has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 3. California Unfair Competition Law

The California Unfair Competition law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law]." Ca. Bus. & Prof. Code §17200. The purpose of the law "is to protect both consumers and competitors by promoting fair competition in commercial

markets for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002). The California Supreme Court has said that "the act provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent *unfair business practices* and restore money or property to victims of these practices." *Zhang v. Superior Court* 57 Cal. 4th 364, 371 (2013) (emphasis in original).

In support of her motion for leave to amend, Ms. White alleges that Wells Fargo failed to comply with California's Unfair Competition Law. Am. Compl. at ¶ 96. Ms. White alleges that Wells Fargo acted immorally, unethically, oppressively, and unscrupulously in injuring consumers, like herself. *Id.* at ¶ 97. Ms. White also alleges that Wells Fargo engaged in unfair practices under § 5 of the Federal Trade commission Act. *Id.* at ¶ 102.

Under California law, the Unfair Competition Law is not "a means of enforcing the underlying law." *Solus Indus. Innovations, LLC v. Superior Court*, 4 Cal. 5th 316, 341 (2018). Instead, the law "borrows violations of other laws and treats them as unlawful practices that the [Unfair Competition Law] makes *independently* actionable." *Id.* (quoting *Rose v. Bank of Am., N.A.*, 57 Cal 4th 390, 396 (2013)) (internal quotation marks omitted). By "borrowing requirements from other statutes, the [Unfair Competition Law] does not serve as a mere enforcement mechanism." *Rose*, 57 Cal. 4th at 397. The Act offers "its own distinct and limited equitable remedies for unlawful business practices," but the Unfair Competition Law borrows unlawfulness definitions from other independent statutes. *Id.*

In California, false advertising laws prohibit "untrue or misleading" statements designed to "induce the public to enter into any obligation" to purchase various goods and services. Ca. Bus. & Prof. Code § 17500. The unfair competition and false advertising laws were intended to address the "overarching legislative concern [was] to provide a streamlined procedure for the

14

prevention of ongoing or threatened acts of unfair competition." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003). The California Supreme Court has recognized that "[a]ny violation of the false advertising law . . . necessarily violates" the Unfair Competition Law. *Kasky*, 27 Cal. 4th at 950 (quoting *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 210, (1983)).

Here, Ms. White's claims do not support a false advertising claim. To succeed on a false advertising claim "it is necessary only to show that 'members of the public are likely to be deceived." *Kasky*, 27 Cal. 4th at 951 (quoting *General Foods Corp.*, 36 Cal. 3d at 211). Ms. White, however, has not made a showing that Wells Fargo engaged in any untrue or misleading representations in California that induced her to act in Connecticut. *See* Ca. Bus. & Prof. § 17500 (requiring action that originated in California to effect consumers in another state). In addition, as mentioned previously, there is nothing to indicate that Wells Fargo knowingly misrepresented its position to Ms. White.

Accordingly, she has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 4. Connecticut Unfair Trade Practices Act

CUTPA is also a consumer protection statute. *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir. 1997) (citing *Witham v. ITT Hartford*, No. CV 960132891, 1997 WL 325443, at *1 (Conn. Super. Ct. June 4, 1997)) ("purpose of CUTPA is to protect consumers from unfair trade practices"). "CUTPA provides a statutory cause of action for any person who has suffered an ascertainable loss of money or property as a result of an unfair trade practice." *Bellemare v. Wachovia Mortgage Corp.*, 94 Conn. App. 593, 606 n. 6 (2006).

In support of her motion for leave to amend, Ms. White alleges that Wells Fargo violated

15

the CUTPA due to unconscionable and deceptive trade practices. Am. Compl. at ¶ 110. Ms. White also alleges that Wells Fargo violated her rights with a bait and switch refinance of her loan. *Id.* at ¶ 116.

CUTPA provides that "[n]o person shall engage in . . . unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). It further provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action." Conn. Gen. Stat. § 42-110g(a).

"To determine whether a business practice violates CUTPA, Connecticut courts follow the Federal Trade Commission's 'cigarette rule[.]'" *Aztec Energy Partners, Inc. v. Sensor Switch, Inc.*, 531 F. Supp. 2d 226, 232 (D. Conn. 2007). The factors weighed under the cigarette rule are

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Fabri v. United Technologies Int'l, Inc.*, 387 F.3d 109, 119–20 (2d Cir. 2004) (internal quotation marks and citation omitted); *Cheshire Mortgage Serv. Inc. v. Montes*, 223 Conn. 80, 106 (1992). "All three criteria do not need to be satisfied to support a finding of unfairness." *Cheshire Mortgage*, 223 Conn. at 106 (internal quotation marks and citation omitted).

Here, the Complaint fails to allege on its face a claim under the CUTPA. Ms. White alleges Wells Fargo engaged in unconscionable and deceptive practices for denying her HAMP mortgage application. *See* Am. Compl. at ¶ 110. But Ms. White has not articulated how Wells

16

Fargo's practices offend public policy, how its conduct was immoral, unethical, oppressive, or unscrupulous, or whether there had been substantial injury to consumers. *See Fabri*, 387 F.3d at 119–20. Rather, Ms. White's Amended Complaint would only comprise a "threadbare recital of the elements of a cause of action," allegations insufficient to state a CUTPA claim. *Iqbal*, 556 U.S. at 678; *see also Nwachukwu v. Liberty Bank*, No. 3:16-cv-00704 (CSH), 2017 WL 2873048, at *18 (D. Conn. July 5, 2017) ("*Iqbal-Twombly* 'plausibility' analysis applies in determining whether a plaintiff has pleaded a viable CUTPA claim.").

Even with a broad reading of the Amended Complaint, Ms. White has only provided threadbare assertions of perceived wrongdoings that only amount to legal conclusions, not plausible allegations. Moreover, to succeed on a claim under CUTPA, "[t]he practice attacked may be actually deceptive or a practice amounting to a violation of public policy." *Fabri v. United Techs. Int'l, Inc.* 387 F.3d 109, 120 (2d Cir. 2004). But Ms. White has not alleged any practice that was deceptive—she has only alleged that she was denied a HAMP mortgage modification. And she has not shown how Wells Fargo denying this loan modification violates Connecticut public policy.

Accordingly, she has not pleaded "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### 5. Futility of the Amended Complaint

The Second Circuit has held that "[a] pro se complaint should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010)) (internal quotation marks omitted). This is because "a *pro se* plaintiff who is

17

proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

At the same time, where there is no indication that a valid claim might be stated after a liberal reading of a *pro se* plaintiff's complaint, the Court need not grant leave to amend. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("[w]here it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) ("We do not find that the complaint "liberally read" suggests that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe . . . . The problem with [this pro se plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied." (citations, internal quotation marks, and alterations omitted)).

Here, even construing Ms. White's claims liberally, as mentioned above, her original Complaint lacks standing and each of her new causes of action in the Amended Complaint are futile. Ms. White's claims would therefore not be plausible, even if the Court grants leave to amend. *Teichmann v. N.Y.*, 769 F.3d 821, 825 (2d Cir. 2014) ("Although we liberally construe [Plaintiff]'s pro se amended complaint, we still require that he plead facts sufficient to state a claim to relief that is plausible on its face." (citing *Triestman*, 470 F.3d at 474, & quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted)); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("Because [Plaintiff] appeared *pro se* before the District Court, he is 'entitled to special solicitude,' and we will read his pleadings 'to raise the strongest arguments

18

that they suggest.' . . . . At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Triestman*, 470 F.3d at 477; *Twombly*, 550 U.S. at 570).

Accordingly, because granting leave to amend here would be futile because the underlying legal theories behind Ms. White's negligence, fraud, unfair competition, and CUTPA claims are fundamentally flawed, and an opportunity to amend them will not cure them, the Court declines to provide leave to amend the Complaint. *See Wright v. Albany City Police Court,* 1:18-CV-649, 2018 WL 4347793 at *3 (N.D.N.Y. Sept. 12, 2018) (after reviewing report and recommendation of dismissal of *pro se* plaintiff's complaint, and objections, and adopting recommendation, court concluded that "granting Plaintiff leave to amend would be, to say the least, unlikely to be productive and indeed would be futile.").

## IV. CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the recommended ruling to dismiss this case under 28 U.S.C. § 1915(e)(2)(B) and **DENIES** leave to amend the Complaint.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of July 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE